May it please the court, Nate Cade appearing on behalf of the appellant Richard Schneider. Richard Schneider unfortunately learned the hard way that social media is not what it's cracked up to be and that not everyone you intend or interact with is your friend. Mr. Cade forgive me, I hate to interrupt you before you've even taken a breath, but there is an active case pending in Wisconsin State Court. Shouldn't we abstain until that case is decided? No Judge Roedner and the reason I know the court asked for some information regarding abstention. Those cases are entirely separate. There's only one small portion that might overlap and that small portion deals with the issue of due process. Obviously there's a due process claim in the federal court. There is also a due process claim in the state court, but other than that there is no overlap. There are facts, but the state court, the only thing the judge can do there, it's being briefed and my understanding is later in March, is indicate to work WERC that they should have another hearing. And there the only thing that can happen is they could say he gets his job back, they can change some of the underlying conditions in terms of what takes place, etc. But they can't decide the First Amendment issue. Only this court can. And the damages are entirely different. And I can go into the damage issue, obviously, because we've got the Seventh Circuit jury instruction on damages, which is entirely different than the relief that can be provided in state court. In fact, state court can't even award attorney's fees with regards to the underlying case. Is the case in state court a Chapter 227 review? At the current stage it is, Your Honor. And the scope of that review and the relief available consists of what? And I know in that sort of a proceeding, constitutional claims are permissible and can be joined with the Chapter 227 review. They can be, but again, it's a separate issue in terms of the First Amendment. And all that court can do, as I said, is they can award wages for back pay, potentially front pay. They can have him reinstated. They can issue some sort of order to the Department of Corrections indicating that their actions are inappropriate, etc. And some of that is moot because at the time Mr. Schneider was suspended, there was no internal policy at DOC regarding Facebook and social media. And as soon as he got suspended, they developed a policy and implemented it. So, and is front pay, or are front pay damages and back pay damages being sought there? The, well, initially what we are seeking is for him to be reinstated. So that's a, you know, first they have to decide whether work was incorrect. Does he get a hearing? And then, theoretically, work can say, yes, he gets reinstated, or, and if he gets reinstated, then we have to do damages. So it's a multi-step process there. But that's different than the damages being sought here for the First Amendment violation. So it has to go back to the agency before the court can award any front pay or back pay? That's my understanding. I have a colleague handling the state claim because I don't normally do employment issues there. But they would have to indicate work upheld the termination. And so the state court under 227, the only thing they can do is say whether it was just cause. And if they say it wasn't just cause, they send it back to work with specific instructions. And then work potentially would have either another hearing, or they may say circuit court overruled us, and now we're going to say there wasn't just cause. So he has to be reinstated, and then we get into the issue of damages. We never discussed damages when we had the initial work hearing. It was just whether they had the appropriate authority to terminate him or not. I'm still a little concerned here. I don't mean to be simplistic, but what happens, for instance, if the state court rules in favor of your client and orders reinstatement? And we rule against him, or vice versa. Are you saying that's not possible under the scenario that you're painting? No, what I'm saying, though, is those are entirely different issues. So if, for example, he is reinstated by the state court, then that's just that they didn't have cause to terminate him. Here, the issue is First Amendment. So did they violate his First Amendment rights as a public employee? This court could turn around and say, because he is with DOC, his First Amendment rights may have been limited. But that's a different story as to the termination, because the state court could say there wasn't just cause. You're seeking reinstatement in this action as well. That's one of the forms of relief? Well, it was one of the forms of relief until the state claim was thrown out. So because we filed both the state and federal in one court, and then once the court ruled against us, Judge Peterson, really the only issue in this court is the First Amendment and the due process, because reinstatement, I don't know if this court has the authority to. Right, not this court. But what you're asking us to do is to reverse the summary judgment and remand for a trial on the First Amendment claim? Correct. In which you would request damages and equitable relief in the form of reinstatement? No, because the state court claims have been lobbed off. So unless somehow, and I haven't seen it, unless somehow the state court could send it back to federal court, if they said, hey, it's come back and now we can hear it, the only thing that would remain in federal court, because the state court claims are gone, would be the First Amendment claim. So it would just be damages, and the typical damages that are found in 601 of the jury instructions. So humiliation, all the different things, things that are supposed to be compensatory, but not wage loss and things of that nature. Are you saying that the state court cannot make factual determinations that would affect a federal court's view of the case here? Are you saying that? No, Judge Roper, I'm not saying they can't make factual determinations. But what I am saying is those are two separate issues. You could have a state court make a determination that he can be reinstated and they didn't have just cause to terminate. So what they did here is they jumped to termination. They have a step procedure and they didn't follow the step procedure. He had had zero discipline. They went right to termination. The state court work could turn around and say, hey, you should have followed the steps of progression in terms of discipline. That's a separate issue. But I don't think this court can reinstate him. This court could find that he's a public employee and he had certain First Amendment rights. But they could say even if he had First Amendment rights and they were violated, the state court can make a determination that they were justified in terminating him. Mr. Cade? Yes. Perhaps taking another kind of tack at this, what remedies then would be available to your client in this court that he could not seek in state court? In other words, he could bring the constitutional claim in state court. He could seek all of these remedies in state court along with reinstatement under Chapter 227. And so what in particular is unique about the remedy that we as a federal court can provide him that he cannot get from the state court proceedings? Well, Judge Lee, I guess when you break it down, first of all, in the state court there is no First Amendment claim because that claim was thrown out on summary judgment. So even if this court steps back and says we're not going to rule on it, even if we're lucky to get work to look at the issue again and say he deserves another hearing or it was inappropriate, the First Amendment claims aren't there for the court. The First Amendment claims were never addressed in the work hearing. When we had it, I believe it was a full day. It may have gone a day and a half. So they were never addressed. I think the question is whether it's possible to join First Amendment and due process constitutional claims under 1983 with the Chapter 227 review and have you done so. It sounds like you have not done so based on the lines here. We have not done so. And really all that can happen in 227 is they can only look as to what occurred with WERC. So they can't turn around and say, oh, and now you can add all of these other claims because it was never addressed. If the circuit court reverses, could that issue come up? I'm not an expert in work procedures. I'm not talking about what the agency decided. I'm talking about the claims that are before the court, the Columbia County Circuit Court. And it is possible to join Chapter 227 claims for judicial review of an agency decision with a constitutional claim arising out of that same decision. But it sounds like that has not been done here. You took two separate paths, one in state court and one in federal court. Well, we took two paths, Judge Sykes, because the bigger issue obviously was we brought everything in federal court. The federal court, Judge Peterson, decided to exercise pendent jurisdiction over the state claim. So that went here. If we did not appeal to this court, then we had possibility of them in state court saying, ah, claim preclusion because the court has already ruled and you never appealed. Judge Peterson didn't assume pendent jurisdiction over the Chapter 227. No, no, no. That can't happen. No, no. When it initially was filed, we had state claims and federal claims all at the same time in the complaint. So he said goodbye to your state claims when he granted summary judgment. So it would be difficult, you know, to turn around in state court to say, okay, now we want to do a First Amendment claim. And the state court judge will say, well, you were in federal court. You lost. You didn't appeal. So therefore. That's the whole point about the abstention inquiry because you're on a collision course with the state court or potentially. But if you haven't brought any constitutional claims in the Chapter 227 complaint. We have not. It's solely a complaint for judicial review under Chapter 227. There's no second or third count for First Amendment due process violations. None of that. Correct. Okay. So, yes, it's, I guess, technically possible. But if we don't appeal here, we potentially are barred there. And that's our big problem. Okay. We haven't left you much time to talk about the merits, but why don't you have at it? Thank you. So basically, the court is aware of the five memes. The district court erred because it made certain assumptions. One of the assumptions it made, it talked about the Facebook memes as being mocking, derisive, and juvenile. And that's basically what 70, 80% of Facebook is and other social media. It also erred. That would be a pretty broad thing for a court of appeals to say. I'm sorry? That would be a very broad generalization for the court of appeals to say in a legal ruling on this case. Well, I think the Supreme Court also is grappling with a lot of that because they've had a couple of cases the last days as to what Section 230 means and everything else. But here also the district court erred because it gave deference to DOC. And one of the arguments it gave to DOC was that it would interfere with the cohesion. Except there was no evidence of interference with cohesion. All we had was them saying, well, it might interfere. It might cause problems. They never put forward a single declaration or affidavit from an employee saying, I can't work with Richard Snyder or I can't have him as my boss or over me. But the case law doesn't require that for a pickering balancing. It doesn't require an evidentiary showing of an actual disruption in the workplace or an actual breakdown in cohesion. It doesn't require an actual, but there is case law from this court that discusses that there's deference given because DOC is considered like a police paramilitary. So there is some deference given. But there's case law that says you have to show something, except when you give deference potentially to the paramilitary. But this court decided a case, Harnisch-Fager, 943 F. 3rd, 1105 from 2019. And there in Harnisch-Fager, it was a person employed by the Indiana National Guard. And if anything is paramilitary, it would be the National Guard. And there, the court said, when they made claims because a woman had published a book saying, well, you've interfered or will interfere, the court said, no, you've got to show a little bit more than just some vague it might interfere. It's the same thing here. This got posted. We don't know who gave notice to the Milwaukee Journal Sentinel that this got posted. No one came forward and said, I have problems. And it's not like any of the other cases cited where you could look and say, well, that person, we've had problems with that individual in the past. But Mr. Cade, here, your client's part of his duties and responsibilities were to implement the regulations and the laws, make sure everyone was following them, including anti-discrimination laws and other employment requirements. And he had broad authority because of the level of his position. In Harnischberger, there, the book really didn't relate much to the plaintiff's particular duties in the National Guard. Here, your client is expected to oversee a workforce that is very diverse and would presumably include people in the very categories that his memes on their face seem to mock and attack. And so how is it, do you, how is it, I don't understand your argument that somehow the memes have, there's no evidence that that would impact his duties to promote cohesion within the workforce or within his staff. Judge Lee, if I take your argument to the logical step that, well, the meme somehow in this diverse force, what if instead he wore a red MAGA hat and he said, hey, MAGA till I die. And people view that and they could say, well, if he's MAGA hat or he's following along those, we think he's racist. But he didn't do that, did he? What he did was one of the memes portrayed basically Muslim children equating them to bags of garbage. That seems very different than a post of him attending, you know, a person attending a MAGA rally or a MAGA hat. It seems particularly derisive and derogatory. And if he has authority and part of his job is to oversee workforce that includes Muslim, Muslims, then how is, does not, how does that meme not relate to the fulfillment of his responsibilities? Well, again, I think that if you take that to its logical extent, then anything that he does on social media that tends to favor one side of, say, the political aisle or something else, someone could say, well, that implicates your duties. What does MAGA stand for? Make America great again. Go to the border. Let's stop the Muslims from coming in. We're going to have bans. All of that is equated. If I see someone with a MAGA hat, I have certain beliefs as to what they think. First of all, I think that I'm sure there are a lot of people in this country that would disagree with your association of a MAGA hat with all of those various connotations. But it seems to me that the, to the extent that his responsibilities include implementing and overseeing, for example, anti-discrimination laws, those anti-discrimination laws don't particularly identify people with different political persuasions as protected groups, but it certainly, certainly includes people of different races, religions, as well, and similar factors. And so it seems to fall squarely within his responsibilities. Well, Judge Lee, I know I'm out of town, but again, if he turned around and didn't have a MAGA hat, but he had something showing that he was a fundamental Christian, and he posted on there that Jesus Christ is his savior, if someone is of Muslim origin, they could turn around and say, I think you might discriminate against me. It's the same analysis. The point is, he had had no problems prior. You know, there wasn't any questions. One of the issues was the LGBT flag. He oversaw, as a deputy warden, 14 prisons. Governor Evers had allowed, back in June of that year, for the prisons to, if they wanted to, to fly the LGBTQ flag. He was the only one who authorized it to fly at the prisons. So it's hard to reconcile saying, oh, well, he's got a meme there about flying flags, when he's the one who's turned around and authorizing the very same flag to fly. There is no evidence that he had done anything improper. No one came forward and said, I think he was discriminating against me. I think he did this issue against me. I'd like to take you just for a minute. I know we are going over your time, but is it your view that we need to have someone complain before we think a work behavior is disruptive? For instance, if an employer belittles and harasses her employees every day, and they're all too scared of losing their jobs to complain, but the HR director actually overhears it, should the HR director say to herself, well, no one has complained, so it must not be disruptive? I don't understand that argument, you see. I'm not saying disruptive, but the difference here is he wasn't fired immediately, Judge Roedner. They investigated. And one of the issues with the investigation, I believe it was the Harnerschwager case, where it was a four-month time period. Over those months, they found nothing in their investigation. So they didn't find anything to suggest that there had been a lack of cohesion or people had complained or there had been any problems. And that was one of the centerpieces. So if they had just said, hey, you're fired, then I would agree with your argument. But if they're taking the steps of investigating, then one of the things is to find out, do they have other means to uphold determination based on the First Amendment? I don't know how much time I have left, but thank you. Thank you. I'll restore some rebuttal time. Mr. Kilpatrick. Good morning, Your Honors. Good morning, Your Honors. May it please the Court. My name is Stephen Kilpatrick, Assistant Attorney General with the Wisconsin Department of Justice. Appearing on behalf of Appellees Kevin Carr, Amy Pachaczek, Magda Fesajai, and Carrie Byer. After listening to counsel, I believe that there is a relatively easy way to dispose of this case, possibly without getting to the merits or to abstention, and that is by qualified immunity. What I heard from opposing counsel was that all that is left here are damages claims. And if that is the case, he has sued the appellees in their individual capacities. We have made arguments in our brief that qualified immunity applies. The court does not need to determine whether a constitutional violation of the First Amendment or due process occurred. It can skip to the second step of qualified immunity. And the inquiry would be whether there was any clearly established law that the four defendants would have been placed on notice that the actions that they took against Mr. Schneider at that time would have been in violation of the First Amendment free speech clause prohibiting retaliation or the due process clause. So if I take it that because you're starting your argument this way, that you agree with Mr. Cade that we should be hearing this case, even though there is a parallel proceeding in the state court that involves essentially the same parties. Are you agree with his position? Am I correct? Yes, our first position is that this court can affirm on alternative grounds because the district court did not reach qualified immunity. It went ahead to the merits, but this court could reach on alternative grounds qualified immunity. And if that were the case, then I believe from what I've heard opposing counsel say there are no official capacity claims remaining that would have any type of perspective relief that could interfere with any of the state proceedings. So I do believe that abstention can be avoided altogether if there were a qualified immunity ruling by this court. And I'm happy to answer questions about the merits and abstention. I'm not trying to say that I won't, but I believe that there is a relatively easy way to dispose of this case now. Is the record clear on the forms of relief that remain live in the case? In the federal case? Yes, in our case. There were in the complaint, there was a request for reinstatement. I thought so. And from what I heard just now, it sounds like there is no claim for reinstatement anymore. And if that's the case, then all the complaint asked for otherwise would damages compensatory damages under 1983 as to these four individuals in their individual capacity. And in briefing before the district court, I point, and I think we've made this case argument in the brief, is that as to the due process claim, the plaintiff did not respond to the raising of the qualified immunity defense by the defendants and therefore forfeited that argument. And here before this court, if you look at the reply brief, the plaintiff appellant cited no cases, none in response to the argument that the defendants raised with regard to qualified immunity as to both constitutional claims, the First Amendment retaliation and the 14th Amendment due process. So it's our position now that once qualified immunity is raised, it is the burden of the other side to point to cases that would have shown these four defendants would have been on notice that the actions that they were going to take against him, Mr. Schneider, would have violated clearly established First Amendment retaliation law and due process law. I was a little unclear about the nature of the due process claim based on what went on in the district court in the briefing here. It had overtones of a substantive due process claim actually challenging the content of DOC's rules to the extent that they don't provide any guidelines for social media use. Right. That's a substantive claim about the content of the rules. That's not a process-based change. In other words, you didn't give me a hearing. Two different kinds of claims. Right. The different aspect of that type of a due process claim, it clearly wasn't briefed before the circuit court and wasn't briefed before this court. The district court took it as a procedural due process claim. He wasn't put on notice. That was the way that Mr. Schneider argued it. He wasn't put on notice that what he would have done would have subjected him to termination. That's very similar. I agree. It's very similar to what he's raised in state court in the state court proceeding is that the work rules that were referenced in the termination letter and in the predisciplinary hearing didn't encompass a social media policy. They didn't reference what a person can and can't do on social media. It's our position that the district court was correct in that the work rule, at least work rule 25, was clear that what someone does outside of work, their position, that could have a detrimental effect on their work. That wasn't sufficient notice. Yeah, in general terms. There's no social media policy in DOC at the present time or at the time of this termination. At the time of the termination, right? There was no policy. There is one now. Okay. But I do disagree with opposing counsel that the fact that there is one now somehow bolsters their case for due process. I don't believe there's been any case law cited for that proposition. And for clarification, the Chapter 227 judicial review proceeding in Columbia County is purely a matter of state law. There's no federal constitutional claim in that case. As far as I can tell, yes, Your Honor, because the WERC, Wisconsin Employment Relations Commission, was tasked at determining whether the Department of Corrections had just cause to terminate his employer, his employment, Mr. Schneider's employment. It didn't have the opportunity to hear a due process claim. Right. But the circuit court would, if such a claim were joined with the Chapter 227 complaint. That's correct. If it were joined. And it has not been joined. Okay. All that's before the Columbia County Circuit Court is a Chapter 227 judicial review action. So, it is a limited, in Wisconsin, it's a very limited type of review. The trial court essentially sits as an appellate court. There is a closed record of the evidence that was submitted during the contested case hearing before the commission. And the circuit court then looks at that closed record and determines whether the conclusion of the commission was correct. And the commission concluded, after the district court issued its decision, concluded that the Department of Corrections had just cause to terminate Mr. Schneider's employment, as that term is defined in the statutes and in case law. So, if we find that you're correct as to qualified immunity, what is your view of the next steps in the state court proceeding? Your Honor, I believe that the state court proceeding can continue. I don't believe when we were tasked with determining whether there were any parallel state proceedings and what doctrines of abstention were to apply here. I'm not sure and I don't think that these cases in state court and federal court are truly parallel. There are different claims, as I explained. The federal court has Section 1983 First Amendment retaliation claims and 1983 due process claims. And neither of those claims are attached to a Chapter 227 judicial review action in Columbia County. And there wasn't a First Amendment retaliation argument made by Mr. Schneider in the proceedings before the commission. There was reference to due process, but it was more of an argument that the work rules that were cited in the letter didn't provide him with sufficient notice. That is what, under a just cause standard, a just cause hearing, the commission can only determine. The commission determines whether the employer proved its case under a just cause proceeding in front of the commission. The employer has the burden to show that it meets its burden in showing that there was a violation of these work rules. And if that's the case, then the commission determines whether there were sufficient grounds to implement the level of discipline imposed. And here, that level of discipline was termination. And the commission determined that was the case, again, after the district court issued its decision. How much deference do we give to an employer's assessment of what is disruptive? The short answer, Your Honor, is a lot. The case law shows that local law enforcement agencies and prisons are given deference. Case law shows from this court and from the Supreme Court that prison officials don't have to wait for a disruption to occur, but can make reasonable predictions. That was in Connick and also in Waters v. Churchill. Also, I want to point out that in this case, Mr. Schneider was suspended with pay immediately upon the department finding out about the Facebook reposting of the memes. So there was no opportunity for any type of disruption to occur because he was no longer on duty. He was no longer on premises during the four months or so of the investigation prior to his dismissal. So I believe that the lack of evidence of disruption does not sink the defense or the outcome issued by the district court here. Mr. Kopelchick, I understand that the department also has a progressive discipline policy. And that the progressive discipline policy, the department elected not to go that route. And can you provide me with some more information with regard to that, please? Yes, Your Honor. It is our position that that is irrelevant for the purposes of a First Amendment retaliation or due process claim. Those are strictly state law issues. Just Cause has recently, within the last few years, attempted to be defined in state statute. There are now certain lists, I don't believe they're exhaustive, of certain types of actions that can be taken without imposing progressive discipline. So as a state employee, if you are found to have violated a work rule, you may get a one-day suspension, then a three-day, then a five-day, and then maybe discharge. And there are circumstances in which progressive discipline may be avoided. And this was one instance in which the Department of Corrections decided that it was that special case where progressive discipline could be avoided. But that, Your Honor, is for the Wisconsin Elections Commission to determine. As I said before, as part of the Just Cause inquiry, one is whether the work rules were violated. The second inquiry would be, what was the proper level of discipline? Was there Just Cause here to terminate Mr. Schneider's employment? And again, after the district court issued its decision, the commission said yes. So for the purposes of abstention, Your Honors, is we believe that there are not parallel claims. And so likely the Colorado River abstention doctrine wouldn't apply. And I don't think the Younger abstention doctrine applies either. How does the qualified immunity inquiry map onto the substantive First Amendment claim in this case, which is governed by a multi-factor balancing test in which the factors are unweighted and discretionary and non-exclusive? Yes, Your Honor. So for the purposes of qualified immunity, case law teaches that it's a fact-intensive inquiry. And here, under Pickering balancing, that also is fact-intensive and multi-faceted with regard to different balancing factors. That suggests that qualified immunity will never be pierced in a conic Pickering speech retaliation case. Because everything depends on facts. Nothing depends on law. Well, in this case, Your Honor, I don't believe that there's any cases. And I think it's just the opposite. We cited our Lulovsky, this court's Lulovsky decision. So for First Amendment purposes, how were the four defendants to have known that terminating Mr. Schneider's employment or taking action in the due process and the procedure would have been violative of his First Amendment rights to be free from retaliation? I don't believe that there's any case law that would have put them on notice that that was something they could be liable for under 1983 for damages. And with that, I ask that the court affirm. Thank you. Thank you. Mr. Cade, I'll restore your rebuttal time that you had reserved. We kept you busy with abstention questions. Thank you. I will quickly follow up with what my opposing counsel had there. I do want to start with he said there was nothing putting them on notice. I would disagree. Harnisch-Fager came out. It was out there in 2019 before any of this took place. And the key in Harnisch-Fager was it was on the Ms. Harnisch-Fager's private Facebook page just as this was. The only reason it came to light is because it was in the Journal Sentinel. So had they read the Harnisch-Fager case, they would have said, hey, it had nothing to do directly with work. He didn't identify anywhere that I am a member of DOC or I'm a supervisor and I'm taking these bad actions. Nothing. It was on his own time private Facebook page. So that, at a minimum, should have put them on notice that something improper could take place. More importantly, Judge Lee, you had asked about the progressive discipline. He got terminated after the then-Lieutenant Governor Mandela Barnes posted, hey, this guy should be terminated. He shouldn't be working for the state at all. Right? If the work rules were so clear, then that should have put everybody on notice. But no one was on notice at DOC what was or is not improper or violative of this work rule because the work rules are vague. In fact, one of the points that I raised in deposing Ms. Fessahaye is she's very active on social media. We're socially friends. My child and her brother went to grade school together. But she has a number of posts where, for example, she was posting about another attorney, a friend of ours, who had done well. But he also has been in the newspaper because he was the attorney and may have violated some ethics rules with regards to a person who might have committed a rape. So my argument to her was, well, if you're supporting somebody who is tied closely as a client and as a colleague because they have a joint development for someone who's committed rape, doesn't that mean that if someone has a problem with sexual harassment, they don't come to you? I mean, that's really what the argument is, is, hey, the mean means this, so you can't tie all of that together. Leslowski has nothing to do with this case because the sheriff's deputy, the officer, actually had gone to the crowd first in uniform, had raised some statements. He had called the woman a fat cow because they were anti-abortion protesters and made some other statements. Then he went back later on and said to them, do you remember me? And they said, yeah, you were the cop who was here earlier. None of this was suggested that Snyder was working for DOC or was involved with DOC. And finally, qualified immunity doesn't apply, as I said, because they certainly had noticed that violating someone's First Amendment rights could cause problems. Harnisch-Baker is very clear on that point at 1120 and 1121 that it's a general audience that should put them on notice. And just to clarify, to the extent that there's any doubt, there's no longer a claim for prospective relief in this case? That is correct. And I did pull up, I had someone send me the work complaint. All it said in the work complaint, it was six paragraphs, I think, seven paragraphs. And it was just that the hearing— I'm talking about in this case. Correct, correct. But you had asked earlier about what the relief was. The only argument there was that the hearing examiner was biased and work turned around and affirmed. So the only issue the circuit court judge in Columbia County is taking up is, did work have a basis to uphold the hearing examiner and was he biased? I think Judge Rovner had a question. Did you forfeit the qualified immunity argument? I don't think we did because I don't think it was—I don't think the district court dealt with it. And I don't think there's an argument. I don't think we forfeited it. Thank you. All right. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.